Jerome N. Scott Sr
NAME

F41852
PRISON NUMBER

Calipatria State Prison P.O. Box 5006
CURRENT ADDRESS OR PLACE OF CONFINEMENT

Calipatria, Ca 92233
CITY, STATE, ZIP CODE

ORIGINAL

FILED
JUL 1 5 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ECJ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

'08 CV 1278 JAH LSP

Jerome Norman Scott,
(FULL NAME OF PETITIONER)

PETITIONER

v.

Larry Smalls,
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS])

RESPONDENT

and

Jerry Brown,
The Attorney General of the State of California, Additional Respondent.

Civil No. ______
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

**PETITION FOR WRIT OF HABEAS CORPUS**

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

2254 ✓ 1983 ___
FILING FEE PAID
Yes ✓ No ___
IFP MOTION FILED
Yes ___ No ✓
COPIES SENT TO
Court ✓ ProSe ___

1. Name and location of the court that entered the judgment of conviction under attack: Superior court of California County of San Bernardino
2. Date of judgment of conviction: May 05 2006
3. Trial court case number of the judgment of conviction being challenged: FVA025926
4. Length of sentence: 57 years to Life

5. Sentence start date and projected release date: August 18 2006
Undetermined

6. Offense(s) for which you were convicted or pleaded guilty (all counts): Murder in the first degree, Assualt with deadly weapon

7. What was your plea? (CHECK ONE)
   (a) Not guilty ☒
   (b) Guilty ☐
   (c) Nolo contendere ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
   (a) Jury ☒
   (b) Judge only ☐

9. Did you testify at the trial?
☐ Yes ☒ No

**DIRECT APPEAL**

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
☒ Yes ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:
   (a) Result: Affirmed
   (b) Date of result (if known): 11-29-07
   (c) Case number and citation (if known): E041200-Super CT-FVA25926
   (d) Names of Judges participating in case (if known) Ramirez, Richli McKinster
   (e) Grounds raised on direct appeal: 1st degree murder not supported by Substantial evidence. Addmission of uncharged Dissimalar offense Sentencing scheme violated Blakely and section 1170

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
   (a) Result: Denied
   (b) Date of result (if known): 2-13-08
   (c) Case number and citation (if known): E041200 - S158997
   (d) Grounds raised: 1st degree murder not supported by substantiel evidence, Addmission of uncharged dissimilar offense, sentencing scheme violated Blakely and section 1170

13. If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

(a) Result: N/A

(b) Date of result (if known): N/A

(c) Case number and citation (if known): N/A

(d) Grounds raised: N/A

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?
☒ Yes ☐ No

15. If your answer to #14 was "Yes," give the following information:

(a) **California Superior Court** Case Number (if known): WHCSS-0700081

(b) Nature of proceeding: Habeas Corpus

(c) Grounds raised: Petitioner's trial attorney failed to introduce favorable evidence - Ineffective assistance of counsel Due process as guaranteed by the 6th and 14th Amendments

(d) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☒ No

(e) Result: Denied

(f) Date of result (if known): March 18 2008

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?
☒ Yes ☐ No

17. If your answer to #16 was "Yes," give the following information:

(a) **California Court of Appeal** Case Number (if known): E045489

(b) Nature of proceeding: Habeas Corpus

(c) Names of Judges participating in case (if known) Miller

(d) Grounds raised: Petitioner's trial attorney failed to introduce favorable evidence - Ineffective assistance of counsel Due process as guaranteed by the 6th and 14th Amendments

(e) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☒ No

(f) Result: Denied

(g) Date of result (if known): April 10 2008

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☒ Yes ☐ No

19. If your answer to #18 was "Yes," give the following information:

(a) **California Supreme Court** Case Number (if known): S158155

(b) Nature of proceeding: Habeas Corpus

(c) Grounds raised: Petitioner's trial Attorney failed to introduce favorable evidence - Ineffective assistance of counsel Due process as guaranteed by the 6th and 14th Amendments

(d) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☒ No

(e) Result: Denied

(f) Date of result (if known): April 30 2008

**20.** If you did ***not*** file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

N/A

## COLLATERAL REVIEW IN FEDERAL COURT

**21.** Is this your **first** federal petition for writ of habeas corpus challenging this conviction?

☒ Yes ☐ No (IF "YES" SKIP TO #22)

(a) If no, in what federal court was the prior action filed? ______

(i) What was the prior case number? ______

(ii) Was the prior action (CHECK ONE):

☐ Denied on the merits?

☐ Dismissed for procedural reasons?

(iii) Date of decision: ______

(b) Were any of the issues in this current petition also raised in the prior federal petition?

☐ Yes ☐ No

(c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?

☐ Yes ☐ No

---

**CAUTION:**

- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present ***all*** other grounds to the California Supreme Court before raising them in your federal Petition.
- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.
- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

---

## GROUNDS FOR RELIEF

22. **State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground.** (e.g. what happened during the state proceedings that you contend resulted in a violation of the constitution, law or treaties of the United States.) If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: DUE PROCESS/FOURTEENTH AMENDMENT VIOLATION; ADMISSION OF UNCHARGED OFFENSE RENDERING PETITIONER'S TRIAL FUNDAMENTALLY UNFAIR.

**Supporting FACTS**: PETITIONER'S TRIAL BY JURY COMMENCED ON APRIL 11, 2006 WITH MOTION IN LIMINE AT WHICH TIME PROSECUTOR INFORMED THE COURT AND DEFENSE COUNSEL OF HER INTENT TO ADMIT THE EVIDENCE PETITIONER POSSESSED DRUGS AND PARAPHERNALIA FOR PURPOSES OF SALES TO SHOW CORROBORATION AND TO ESTABLISH MOTIVE. CORROBORATION IN REGAURDS TO A STATMENT BY VICTIM'S MOTHER THAT SHE'D GONE TO PETITIONER'S HOME THE DAY AFTER THE MURDER AND ASKED PETITIONER IF HE HAD SEEN VICTIM AND WHILE PETITIONER INITIALLY STATED HE HAD NOT SEEN VICTIM IN A WEEK, HE THEN TOLD HER HE HAD SOLD VICTIM AN OUNCE OF MARIJUANA EARLIER IN THE DAY PRIOR TO VICTIMS DEATH. MOTIVE IN THAT, IT WAS THE PROSECUTIONS THEORY THAT GUNS AND DRUGS WERE TIED TOGATHER TO PETITIONER'S MURDER OF VICTIM. (I RT-17-19) INCIDENTTALLY THE ONLY EVIDENCE THAT PROSECUTION HAD IN REGAURDS TO MOTIVE WAS A STATE

(1 OF 6)...

**Did you raise GROUND ONE in the California Supreme Court?**

☒ Yes ☐ No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): Petition for review

(2) Case number or citation: S158997

(3) Result (attach a copy of the court's opinion or order if available): Denied

...(2) CONTINUE

MENT BY THE PROSECUTION'S CHIEF WITNESS THAT HE AND VICTIM ARRIVED AT PETITIONER'S HOME AT WHICH TIME PETITIONER CAME DOWN STAIRS AND REMOVED A GUN FROM A HANDBAG COMPLAINING THAT VICTIM HAD SOLD HIM A BAD GUN. PETITIONER THEN POINTED THE GUN AT THE WALL PULLING THE TRIGGER SEVERAL TIMES STATING "SEE THE GUN DON'T WORK". PETITIONER THEN REPOSITIONS THE GUN AND PULLS THE TRIGGER ONCE MORE, THIS TIME THE GUN FIRES STRIKING VICTIM. IN ADDRESSING THE ISSUE OF MOTIVE THE TRIAL COURT ASKED THE PROSECUTION IF A DRUG FOR GUNS CONNECTION HAD BEEN MADE TO WHICH THE PROSECUTOR RESPONDED THAT NO SUCH CONNECTION HAD BEEN MADE. FURTHER STATING THAT THIS THEORY DEPENDED ON WHAT WITNESSES MIGHT SAY DURING PETITIONER'S TRIAL. (I RT 18). PETITIONER'S COUSEL THE MADE AN ORAL MOTION TO EXCLUDE MARIJUANA AND SALES THEREOF UNDER (352) AS BEING MORE PREDJUDICAL THAN PROBATIVE. THE COURT, HAVING PRESIDED OVER PETITIONER'S PRELIMINARY HEARING, STATED THAT IT HAD SUSPECTED THAT DRUGS WERE SOMEHOW INTERTWINED IN THE WHOLE TRANSACTION BUT WOULD RESERVE IT'S RULING UNTIL IT HEARD IT. FURTHER STATING, 'ID' DIDN'T SEEM LIKE A SUPER ISSUE, ALTHOUGH IT MIGHT DEVELOPE. IN CAUTIONING THE PROSECUTION THE COURT STATED IF THE ONLY ISSUE THE MARIJUANA AND SALES THEREOF WAS BEING INTRODUCED FOR IS THAT THE VICTIM AND PETITIONER HAD PRIOR CONTACT THEN IT SEEMED LIKE THE PROSECUTOR WAS GETTING INTO AN AREA THAT WAS PROBABLY MORE PREDJUDICAL THAN PROBATIVE. (I RT 17-19). THE COURT THEREAFTER

...(a) CONTINUE

MADE A TENTATIVE RULING THAT THE PROSECUTION COULD MENTION STATEMENT PETITIONER MADE TO VICTIMS MOTHER IN OPENING STATEMENTS, BUT COULD NOT MENTION MARIJUANA FOUND IN PETITIONERS HOME, SALES, OR PARAPHERNALIA, WITHOUT FURTHER ORDER OF THE COURT. (IRT 66-67). FOLLOWING MORE PRETRIAL DISCUSSIONS THE PROSECUTION SUBMITTED POINT AND AUTHORITIES REGARDING THE SUBMISSION OF MARIJUANA FOUND AT PETITIONERS HOME AND SALES THEREOF. IN SUPPORT OF SUBMISSION/ADMISSION UNDER EVIDENCE CODE 1101(B). IN PRESENTING IT'S MOTION TO THE COURT THE PROSECUTION EXPANDED THE PURPOSES IN WHICH IT WAS SEEKING TO INTRODUCE EVIDENCE THAT PETITIONER POSSESSED MARIJUANA FOR PURPOSE OF SALE. CITING, CONSCIOUSNESS OF GUILT, POTENTIAL IMPEACHMENT, CORROBORATION, IDENTITY, AND MOTIVE, SPECIFICALLY NOTING THAT THE CONTACT AND SUBSEQUENT DISPUTE AND MURDER INVOLVED MARIJUANA, AND SALES OF MARIJUANA. (CT 107-109). YET THE PROSECUTION FAILED TO PROVIDE THE COURT WITH INFORMATION THAT WOULD OVERCOME IT'S EARLIER POSITION THAT NO DRUG/GUNS CONNECTION HAD BEEN MADE. IN EVALUATING THE ADMISSIBILITY OF THE EVIDENCE PETITIONER POSSESSED MARIJUANA FOR PURPOSE OF SALE THE COURT RELIED ON A VERBAL MOTION MADE BY PETITIONER'S COUNSEL SEEKING TO INTRODUCE VICTIM'S PAROLE STATUS AND PRIOR DRUG CONVICTION (FOR PURPOSES OF IMPEACHING PROSECUTION CHIEF WITNESS) AS THE BASIS FOR ALLOWING THE UNCHARGED OFFENSE, STATING SUCH THINGS

...(2) CONTINUE

AS...."IT'S GOING TO BE IMPOSSIBLE FOR BOTH SIDES TO KEEP OUT THE ISSUE OF DRUGS BEING USED, DRUG SALES, AND PREVIOUS DRUG CONVICTIONS. (IRT 86)....."DEFENSE COUNSEL KINDA SEES WHEN YOU LET DRUGS IN ON ONE SIDE, IT'S COMING IN ON BOTH". (IRT 89). IN GIVING THIS GENERAL ANALYSIS THE COURT FAILED TO STATE HOW THE EVIDENCE WAS RELEVENT UNDER EVIDENCE CODE 1101(B), IN REGAURDS TO THE SPECIFIC PURPOSES OF MOTIVE, IDENTITY, CONSCIOUSNESS OF GUILT, AND IMPEACHMENT. WHEN THE PROSECUTOR SOUGHT CLARIFICATION FROM THE COURTS ON WHETHER THE EVIDENCE OF MARIJUANA, SALES, AND PARAPHERNALIA COULD BE INTRODUCED THE COURT STATED THAT IT THOUGHT IT'S PRIOR TENTATIVE RULING WAS THAT 'ALL THE DRUG EVIDENCE' COULD BE INTRODUCED AS CORROBORATION FOR PETITIONER'S ADMISSION TO VICTIM'S MOTHER. HERE THE COURTS CLEARLY FORGOT AND MISSTATED IT'S PREVIOUS RULING. NONETHELESS, THE COURT MADE IT CLEAR THAT THE BASIS FOR THE UNCHARGE OFFENSE WAS FOR THE PURPOSE OF CORROBORATION. (IRT 89). HOWEVER, DURING PETITIONER'S TRIAL THE COURT INSTRUCTED THE JURY THAT THE MARIJUANA/SALES EVIDENCE COULD BE USED FOR THE PURPOSES OF IDENTITY AND INTENT, AND MOTIVE. (II RT 426; III RT 641). SHORTLY THEREAFTER DURING THE SELECTIONS OF JURY INSTRUCTIONS THE PROSECUTOR INFORMED THE COURT THAT THE JURY HAD BEEN INSTRUCTED ON INTENT IN REGAURDS TO THE MARIJUANA/SALES EVIDENCE WHEN THE PROSECUTION WAS ONLY SEEKING TO INTRODUCE THE EVIDENCE FOR THE

...(2) CONTINUE

PURPOSE OF IDENTITY AND MOTIVE. TO THIS THE COURT STATED THAT IT CONSIDERED INTENT AND MOTIVE SOMEWHAT RELATED AND THAT WAS THE REASON THE COURT ON IT'S OWN INITIATIVE HAD INSTRUCTED THE JURY THAT MARIJUANA/SALES COULD BE USED FOR THE PURPOSE OF INTENT. FURTHER STATING THAT MOTIVE WAS PROUBLY THE STRONGEST PURPOSE FOR THE EVIDENCE. [NOTE: NO TESTIMONY ESTABLISHED PROSECUTION'S GUN/DRUGS THEORY EVER MATERIALIZED DURING TRIAL.] SUBSEQUENTLY PETITIONER WAS CONVICTED ON ALL COUNTS AND SHORTLY AFTER APPEALED THE CONVICTION IN THE CALIFORNIA APPELLATE COURT. IN AFFIRMING PETITIONER'S CONVICTION THE COURT CONCLUDED THAT THE EVIDENCE THAT PETTITONER POSSESSED MARIJUANA FOR PURPOSE OF SALE WAS PROPERLY ADMITTED FOR THE PURPOSE OF IDENTITY AND INTENT. THE APPEALS COURT HOWEVER, DENIED THAT EVIDENCE OF MARIJUANA/SALES HAD BEEN INTRODUCED IN PETTITONERS TRIAL FOR THE PURPOSE OF MOTIVE. (opn., 9); (JURY INSTRUCTION: EVIDENCE OF UNCHARGED OFFENSE TO PROVE: MOTIVE, IDENTITY - 375/#15). IN REGAUEDS TO INTENT THE APPEALS COURT REASONED THAT THE JURY COULD OF PROPERLY CONCLUDED THAT 'IF THE PETITIONER WAS NOT A SERIOUS DRUG DEALER HE PROUBLY WOULDN'T HAVE BEEN SUFFICIENTLY UPSET WITH THE MURDER VICTIM ABOUT THE GUN TO KILL HIM. (opn., 9-10) (NOTE: THEORY PROSECUTION ADVANCED AT PETITIONER'S TRIAL AND CLOSING ARGUMENTS WAS PETITIONER KILLED VICTIM BECAUSE HE SOLD PETITIONER A BAD

...(a) CONTINUE

GUN). THE COURT OF APPEALS FOLLOWED IT'S REASONING BY CITING TWO CASES: PEOPLE V. BARNETT (1998) 17 Cal 4th 1044; PEOPLE V. KELLEY (1997) 52 Cal App 4th 568 HOWEVER, BOTH CASES ARE PREDICATED ON MOTIVE.

IT IS FOR THE REASONS STATED HEREIN THAT PETITIONER BELIEVES THAT THE ADMISSION OF THE UNCHARGED OFFENSE THAT PETITIONER POSSESSED MARIJUANA FOR THE PURPOSE OF SALES WAS IMPROPERLY ADMITTED UNDER EVIDENCE CODE 1101(B) FOR THE PURPOSE OF MOTIVE, INTENT, AND IDENITITY, THEREBY RENDERING IT CHARACTER EVIDENCE, IN THAT, BECAUSE PETITIONER WAS A DRUG DEALER HE HAD THE PROPENSITY TO COMMIT MURDER.

(b) **GROUND TWO**: FOURTEENTH AMENDMENT VIOLATION: ERRONEOUS ADMISSION OF UNCHARGED OFFENSE PERMITTED JURY TO FIND PETITIONER GUILTY OF 1ST DEGREE MURDER.

**Supporting FACTS**: PETITIONER WAS TRIED FOR FIRST DEGREE MURDER (§187, Subd.(a)) DURING WHICH TIME THE PROSECUTOR INTRODUCED EVIDENCE OF AN UNCHARGED OFFENSE THAT PETITIONER POSSESSED MARIJUANA FOR THE PURPOSE OF SALE, FOR THE PURPOSE OF PROOVING IDENTITY AND MOTIVE. HOWEVER THE COURT ON IT'S OWN INITIATIVE EXSPANDED THE PURPOSE OF THIS EVIDENCE TO INCLUDE INTENT. WHEN INSTRUCTING THE JURY THE TRIAL COURT TOLD/INSTRUCTED THAT FIRST DEGREE MURDER REQUIRES A SPECIFIC MENTAL INTENT OR MENTAL STATE, AND TO BE GUILTY OF THIS OFFENSE THE PETITIONER MUST NOT ONLY INTENTIONALLY COMMIT PROHIBITED ACT, BUT MUST DO SO WITH SPECIFIC INTENT OR MENTAL STATE. (JURY INSTRUCTION: SPECIFIC INTENT, 252 (#9)). PETITONERS JURY WAS ALSO INSTRUCTED THAT IT COULD USE EVIDENCE PETITIONER POSSESSED MARIJUANA FOR PURPOSE OF SALE TO FIND THAT INTENT. (IIRT 426). ULTIMATELY THE JURY FOUND PETITIONER GUILTY OF FIRST DEGREE MURDER THEREBY FINDING THAT PETITIONER HARBORED THE REQUIRED SPECIFIC INTENT AND MENTAL STATE. IT IS PETITIONERS CONTENTION THAT THE JURY USE EVIDENCE THAT PETITIONER POSSESSED MARIJUANA TO FIND THAT MENTAL STATE, IN THAT, BECAUSE (1 OF 2)...

**Did you raise GROUND TWO in the California Supreme Court?**

☒ Yes ☐ No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): Petition for review

(2) Case number or citation: S158997

(3) Result (attach a copy of the court's opinion or order if available): Denied

...(b) CONTINUE

PETITIONER WAS A DRUG DEALER HE WAS PRONE TO BE VIOLENT. PETITIONER'S CONTENTIONS IS FURTHER SUBSTANTIATED BY THE APPEALS COURT OPINION WERE IT HELD, IN AFFIRMING PETITIONER CONVICTION, THAT PETITIONERS DRUG DEALING TO PROVE INTENT PROVIDED A FACTUAL BACKGROUND FOR PETITIONERS BEHAVIOR EXPLAINING WHY HE ACTED SO SEVERLY TO BE SOLD/GIVEN A DEFECTIVE WEAPON BY THE MURDER VICTIM. (Opn., 11). STATING IT'S OPINION STRAIGHT FORWARD, THE APPEAL COURTS HELD THAT..."IF PETITIONER WAS NOT A SERIOUS DRUG DEALER, HE PROUBLY WOULDN'T OF BEEN SUFFICIENTLY UPSET WITH MURDER VICTIM ABOUT THE GUN TO KILL HIM." (Opn., 9-10)

IT IS FOR THE REASONS STATED HEREIN THAT PETITIONER BELIEVES PETITIONER'S JURY RELIED ON THE ERRONEOUSLY ADMITTED UNCHARGED OFFENSE IN FINDING THE REQUIRED INTENT FOR FIRST DEGREE MURDER, THEREBY VIOLATING PETITIONER DUE PROCESS AND RENDERING THE TRIAL FUNDAMENTALLY UNFAIR.

Filed 11/29/07 P. v. Scott CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E041200 |
| v. | (Super.Ct.No. FVA25926) |
| JEROME NORMAN SCOTT, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Raymond L. Haight III, Judge. Affirmed.

Charlotte E. Costan, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Senior Assistant Attorney General, Pat Zaharopoulos and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant of first degree murder (Pen. Code, § 187, subd. (a)),[1] during which he discharged a firearm causing death (§ 12022.53, subd. (d)) and assault with a firearm (§ 245, subd. (a)(2)), during which he used a firearm. (§ 12022.5, subds. (a) & (d).) He was sentenced to 7 years in prison plus two terms of twenty five years to life. He appeals, claiming insufficiency of the evidence/denial of his motion for a new trial or to modify the verdict should have been granted, evidence was erroneously admitted and sentencing error occurred. We reject his contentions and affirm.

## FACTS

On September 12, 2005, defendant fatally shot his stepsister's son and a frequent visitor to his apartment (hereinafter, the murder victim) and shot at the son's friend (hereinafter, the assault victim). Almost immediately thereafter, the murder victim's body was dumped in the Lytle Creek area and elaborate efforts were made to conceal the crimes. DNA from the murder victim's blood was found in the entryway of defendant's apartment. Bullets identical to the fatal one were found in an alley near the apartment. More facts will be stated in relation to the issues discussed.

## ISSUES AND DISCUSSION

### 1. *Insufficiency of the Evidence/Denial of Motion for a New Trial or to Modify the Verdict*

Before the verdict, the trial court denied defendant's motion for an acquittal of first degree murder saying, "[W]hen I heard the preliminary hearing, I thought . . . [¶]

---

[1] All further references are to the Penal Code unless otherwise indicated.

. . . the evidence [wa]s [not] sufficient to have a first degree murder conviction . . . but after hearing the evidence [at trial], I think there is an interpretation of the evidence [from which] . . . the jury . . . could conclude there was evidence of premeditation and deliberation. [¶] The primary basis for that really is the reaction [of defendant] after the shooting . . . [there was] . . . no evidence he was surprised or shocked in any way. As a matter of fact then he turns, basically chases off [the assault victim] by pointing a gun at him, so I think if the jury accepted all that evidence and interpreted the meaning, and in a convoluted scheme [defendant] had premeditated, deliberated to shoot the [murder] victim for giving him a bad gun."

In his post verdict motion for a new trial or to modify the verdict, defendant asked the trial court to grant him a new trial on the basis that the evidence was insufficient to support the first degree murder verdict or to reduce his conviction to second degree murder or voluntary manslaughter. Defendant asserted that the shooting of the murder victim was an accident.[2]

The trial court refused to reduce the murder conviction to second degree,[3] saying, " . . . [I]f it had been a court trial, I would have found [defendant] guilty of second degree murder. For reasons only he understands he chose to present a defense [, which was that

[2] Defendant also contended that, despite uncontested evidence that the murder victim died of a gunshot wound, there was insufficient evidence to support the gun use allegation because the murder weapon was never found.

[3] It rejected, out of hand, any of defendant's other requests.

some one else killed the murder victim][4] that I don't really even think was viable. And because of that he was convicted of a charge that was greater than he would have if he had put on what was a better defense, which was the accident or misfortune defense. [¶] . . . [¶] There is credible, substantial evidence in the record to support the crime of which he was convicted . . . [¶] . . . [It is] intellectually dishonest of . . . me to . . . us[e] the same standard to reduce a charge when I declined to do so on the [motion to acquit], and . . . as I look at the record . . . , there is credible evidence . . . from which a jury could conclude that the killing occurred after premeditation and deliberation. [¶] . . . I don't think it's strong evidence, but the standard isn't what I would find after hearing the evidence.[5] It's whether there is credible, substantial evidence. I do think looking at the record [that] the jury could interpret the evidence in the case to find premeditation and deliberation."

Although titled a sufficiency of the evidence argument, what defendant actually contends is that the trial court erred in denying his motion to reduce the verdict to second degree murder because, he asserts, " . . . there really was no evidence at all of

---

[4] Despite defendant's suggestion that accident was one of two defenses offered at trial, according to his argument to the jury, it was not.

[5] This is correct. (See *People v. Robarge* (1953) 41 Cal.2d 628, 633; *People v. Taylor* (1993) 19 Cal.App.4th 836, 848; *People v. Trotter* (1984) 160 Cal.App.3d 1217, 1221; *People v. Watson* (1983) 150 Cal.App.3d 313, 317-319 [overruled on other grounds in *People v. Sanchez* (2001) 24 Cal.4th 983, 991, fn. 3]; *People v. Veitch* (1982) 128 Cal.App.3d 460, 467-468; *People v. Lopez* (1969) 1 Cal.App.3d 78, 85; *People v. Edgmon* (1968) 267 Cal.App.2d 759, 766; *People v. Washington* (1958) 163 Cal.App.2d 833, 844; see also, *People v. Risenhoover* (1968) 70 Cal.2d 39.)

premeditation and deliberation, let alone substantial evidence . . . " and because the trial court "did not exercise independent judgment . . . , but bowed to the jury's conclusion that this was first degree murder."

We disagree with defendant's assertion that the evidence was insufficient, as a matter of law, to support a first degree murder conviction. We have no doubt that the jury found, as do we,[6] that defendant's actions immediately before and after the murder constituted a reasonable basis to conclude that the murder was premeditated and deliberate. According to the assault victim, defendant came downstairs, knowing the murder victim was there, with the gun in an eight and one-half by eleven-inch zippered case. The gun contained bullets that were designed to do the maximum amount of damage upon impact. He removed the gun from the case and accused the murder victim of selling him a "messed up gun." Defendant pulled the trigger of the gun three times while he pointed it at the wall between the murder victim and the assault victim. While the gun clicked and the cylinder revolved, defendant, who was irritated at the murder victim said to him, "See, it don't [*sic*] work, you sold me a messed up gun." Defendant then pointed the gun at the murder victim while standing eight to ten feet from him. He pulled the trigger three more times, continuing to complain that the gun did not work. The gun clicked and the cylinder moved three times. Defendant pulled the trigger a fourth time and the gun went off, the bullet hitting the murder victim in the left eye. The murder victim fell against the wall and slid down to the ground and the assault victim

---

[6] The trial court agreed.

jumped back, placing himself outside the front door. Defendant moved closer to the assault victim, turned and asked him what he was looking at, while pointing the gun at the assault victim's chest from about seven to eight feet away. Defendant neither checked on the murder victim nor asked the assault victim to do so. He said nothing about what had just happened. The assault victim took off running. As he ran, he heard a gunshot similar to the one he heard when the murder victim got hit go off behind him, coming from defendant's apartment. No one else appeared when the murder victim was shot, although defendant's teenage daughter had just admitted the victims to the apartment before announcing their presence to her father and going into the kitchen.

This evidence contradicts defendant's current claim that the shooting was an accident. The fact that the two victims were not particularly concerned about defendant's actions until the first bullet was actually discharged from the gun is of no moment. They did not know what defendant's intentions were. However, bringing the gun downstairs, pointing it at the murder victim's head and continuing to fire it until it shot the fatal bullet indicated that defendant planned to kill the murder victim. The fact that he did not react in horror, or, at the least, surprise, when the bullet fired and the murder victim was apparently seriously injured demonstrated that he expected the murder victim to be hit. He did nothing to assist the murder victim, who was a member of his family and someone he saw on a regular basis. Instead, he turned to the assault victim, made a callous and

calculated remark about what had just happened, and thereafter tried to shoot him. That is evidence of willfulness, premeditation and deliberation.[7]

We reject defendant's contention that the fact that the assault victim told different versions of the shooting and/or how he happened to be in defendant's neighborhood at the time did not render his testimony unworthy of belief, by the jury, the trial court in ruling on the new trial motion or, now, us. As defendant acknowledges, the assault victim told various stories to protect his and the murder victim's interests. His account of the shootings was corroborated by physical evidence. Defendant's assertion that the trial court, in denying his motion for a new trial or to reduce the conviction, did not satisfy its duty to assess the credibility of this witness is belied by the record. The trial court twice said that there was credible evidence of premeditation and deliberation.[8] This could have come only from the testimony of the assault victim. Hence, the trial court found that his testimony was credible.

2. *Admission of Evidence*

Before trial began, the People sought admission of evidence that on September 13th, after telling the murder victim's mother that he had not seen her son for one week, defendant said that he had sold him marijuana earlier on the 12th. Defendant objected on

---

[7] Because we do not consider evidence that the crimes were covered up afterward *necessarily* indicative that the murder was premeditated and deliberated, we omit them from this discussion.

[8] As we have stated, on one of these occasions, the trial court concluded there was sufficient credible evidence, which fulfilled its duty with regard to the new trial motion. (See *People v. Robarge* (1953) 41 Cal.2d 628, 633.)

the basis of Evidence Code section 352.[9] At the request of the trial court, the People submitted briefing in which they argued that the statement was relevant, inter alia, to the identity of defendant as the perpetrator by demonstrating that defendant and the murder victim were together around the time of the crimes and why they were together. The People also wanted to introduce testimony by a narcotics expert about marijuana and other sales paraphanelia found in defendant's apartment after the crimes as, inter alia, corroborative of the mother's testimony about defendant's statement to her. At the hearing on the motion, when defendant had not yet decided whether he would testify establishing his defense, which was that some one else had committed the crimes, the People added that his statement to the mother impeached his credibility because it contradicted his previous statement to her that he had not seen the murder victim for one week. The trial court found there was no reason not to admit defendant's statement to the mother, which constituted an admission that he had been with the murder victim around the time of the crimes. The court added that it was impossible to omit references to drugs from the trial.[10] The court agreed with the People that evidence of the marijuana and paraphanelia found at defendant's apartment was admissible because it corroborated the

---

[9] Although, as the People correctly point out, defendant appeared later to abandon his contention that the mother's testimony should be excluded, the record is not clear in this regard, so, for purposes of this argument, we will assume that defendant's Evidence Code 352 objection stood.

[10] Defendant got the trial court to admit evidence that the assault's victim was on probation for a drug offense and, as a condition of his probation, he was not supposed to be in defendant's drug-infested neighborhood.

mother's account. The trial court rejected defendant's contention that the prejudicial impact of this evidence outweighed its probative value. At the time evidence that a box containing marijuana, scales and packaging materials had been found at defendant's apartment was introduced, the jury was instructed that it could use this evidence only to show intent or the identity of the perpetrator.

In contending that the trial court's ruling violated his due process rights, defendant may only reassert that the prejudicial nature of this evidence outweighed its probative value and because of this, the admission made the trial fundamentally unfair. (*People v. Partida* (2005) 37 Cal.4th 428, 436-438.) Presumably in this regard, defendant makes a number of points that are without merit. First, he asserts that the prosecutor's speculation that the murder victim went to defendant's home to purchase marijuana was contradicted by defendant's admission he had sold him marijuana earlier in the day. However, defendant's statement as to the timing of the drug purchase was not necessarily true. The real importance of it, as the trial court found, was that it placed defendant and the murder victim together around the time of the crimes. Next, defendant contends that the motive for the shootings was not drug dealing between defendant and the murder victim but the fact that the latter sold the former a gun that did not work. However, the evidence was not admitted to show that defendant shot the murder victim and shot at the assault victim over a drug deal. It, beside showing that defendant and the murder victim were together around the time of the crimes, provided a factual backdrop for defendant's actions in killing the murder victim and shooting at the assault victim, i.e., if defendant were not a

serious drug dealer, he probably would not have been sufficiently upset with the murder victim about the gun to kill him. Finally, defendant asserts, the trial court conceded that "identification was not at issue." While, based on its hearing of the preliminary hearing testimony, the trial court initially surmised that identification would not be in issue, its assumption was quickly dispelled by the defense's assertion that misidentification of defendant the perpetrator was *the sole* defense.[11]

Defendant totally misconstrues the theory of admissibility of this evidence by asserting that the marijuana sales and murder/assault were not sufficiently similar to permit admission of evidence of the former to prove the identity of the perpetrator of the latter under Evidence Code section 1101, subdivision (b).[12] However, the evidence was relevant to identity in that it constituted an admission by defendant that he was with the murder victim around the time of the crimes. Under the circumstances, there was no need to show similarities between the two offenses in order to establish relevancy.

Defendant again misconstrues the relevancy of the evidence by asserting there were insufficient similarities between the two sets of crimes to permit admission of the

---

[11] Defendant concedes as much in his opening brief. Despite this, he also erroneously asserts that "the other defense . . . was that the shooting was a horrible accident." (See fn. 3, *ante.*)

[12] That section provides, "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

drug dealing to prove his intent during the murder/assault. However, as stated before, evidence of the drug dealing provided the factual background for defendant's behavior, explaining why he reacted so severely to being sold/given a defective weapon by the murder victim. This was entirely proper. (See *People v. Barnett* (1998) 17 Cal.4th 1044, 1117-1118 [evidence of defendant's assault of victim's friend, which resulted in a struggle and bad feelings between the victim and defendant and the victim reporting defendant to authorities was admissible under Evidence Code section 1101, subdivision (b) to show defendant's motive for torturing and killing the victim]; *People v. Kelley* (1997) 52 Cal.App.4th 568, 573, 579 [evidence of defendant's conviction for molesting the victim, for which he was imprisoned, was admissible under Evidence Code section 1101, subdivision (b) to show defendant's motive for later stalking her and his cavalier attitude toward her].)

Asserting that the prejudicial impact of this evidence outweighed its probative value, defendant asserts that it portrayed him as a drug dealer with a propensity to commit criminal acts, like the murder and assault. However, the jury was specifically instructed not to use this evidence for this purpose.

There was no error in the admission of this evidence.

3. *Cumulative Error*

Having concluded there was no error in the failure to grant a new trial or reduce defendant's conviction to second degree murder nor in the admission of evidence, we

necessarily conclude that there was no cumulative error requiring reversal of these convictions.

4. *Sentencing*

The trial court imposed a midterm of three years for the aggravated assault, which the abstract states is the principal term, and four years for its gun use enhancement, and two consecutive 25 years to life terms for the murder and its firearm enhancement.

Defendant contends the case must be remanded for resentencing because the trial court failed to state reasons for imposing consecutive terms. However, his failure to object below forecloses this claim. (*People v. Gonzales* (2003) 31 Cal.4th 745, 751-755; *People v. Davis* (1995) 10 Cal.4th 463, 551-552; *People v. Scott* (1994) 9 Cal.4th 331, 354.) Contrary to defendant's claim, this is not a case where illegal or unauthorized sentence was imposed, and the duty to object below was therefore negated. (*People v. Scott*, *supra*, 9 Cal.4th at p. 354.) Defendant's fall-back position, that his trial counsel was incompetent for failing to object to the failure of the court below to state reasons cannot surpass the hurdle of showing a reasonable possibility that had counsel objected, the trial court would not have imposed consecutive terms. (See *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, [104 S.Ct. 2052, 80 L.Ed.2d. 674].)

Defendant's contention that *Cunningham v. California* (2007) ___ U.S. ___ [127 S.Ct. 856, 166 L.Ed.2d 856] requires the imposition of consecutive terms be justified by findings made by the jury has recently been rejected by the California Supreme Court in *People v. Black* (2007) 41 Cal.4th 799.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P.J.

We concur:

McKINSTER
J.

RICHLI
J.

(c) **GROUND THREE**: Petitioner's Due process rights have been violated because the conviction of first degree murder is not supported by substantial evidence

**Supporting FACTS:** Petitioner was charged on January 6 2006 with first degree murder. Petitioner's preliminary examination commenced on January 19 2006 At the conclusion of the preliminary examination petitioner's Attorney argues there's not enough substantial evidence to support 1st degree murder, that the evidence supports an involuntary manslaughter. At this point prosecution states I don't have to pick which degree. I think facts support an implied malice theory under second degree The court response. I think even the prosecution recognizes some problems with the first degree murder theory - Preliminary 60 thru 64. Petitioner's trial by jury commenced on April 11 2006 at which time prosecution calls there chief witness Charles Graves -(1 RT 98) Charles Graves is the prosecutions sole witness who was with the victim prior to events which led them to petitioner's home to him witnessing the alleged crime to him being the person who made the call to the police. Graves testifies to the following The victim arrives at graves home expressing he has pants (1 OF 5)...

**Did you raise GROUND THREE in the California Supreme Court?**

☒ Yes ☐ No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): Petition for review

(2) Case number or citation: S158997

(3) Result (attach a copy of the court's opinion or order if available): Denied

...(2) Continue



that he wants to sell, so they decide that Jackson street would be a place to start, so they drove to Jackson street and proceed to sell pants, after Selling three pair of pants the victim wants to go check on his Uncle who is the petitioner. Arriving at petitioner's home they knock on the door and are let in by petitioner's daughter, she calls petitioner announcing victim is at the door. petitioner appears from upstairs and proceeds coming down stairs reaching the bottom of the stairs petitioner removes gun from a calender pouch and starts complaining to victim that gun doesn't work you sold me a bad gun, petitioner further explains that gun does not by pointing gun at wall pulling the trigger a Couple of times while stating the gun doesn't work the trigger is pulled a total of three times before pointing gun at victim. petitioner pulls trigger four more times while still complaining that gun doesn't work. the first three times it clicked and the fourth time gun discharged striking the victim, petitioner then turns to witness and ask him what he's looking at. Graves jumps back and proceeds to run to his car petitioner then fires shot at Graves as he is fleeing Graves reach's safety and places call to police - 1RT 103-144. Prosecution contends that petitioner committed first degree murder which as the courts are well aware falls into three categories (A) planning activity (B) motive to kill (C) manner of killing. It is the petitioner's contentions that the prosecution failed to prove these three basic categories the prosecution's cheif witness testified that petitioner came from up stairs complaining that victim sold him a bad gun and testimony by victim's mother that petitioner sold victim marijuana earlier

that day was the only evidence offered in regards to petitioner's activity prior to the alleged incident-2RT 303 neither which consitutes sufficient evidence to substantiate planning the prosecution presented the jury with the following scenario that once victim and witness arrives at petitioner's home, petitioner goes into a charade about gun not working by pointing gun at wall between the victim and witness pulling trigger three times complaing about gun not working thus was done for the purpose of luring the victim and witness into a false sense of security, the petitioner then points gun at victim and pulls trigger four more times still complaining to victim that gun doesn't work in a attempt to keep victim in a false sense of security, on the fourth time trigger is pulled gun discharges the fatal bullet, Prosecution contends petitioner knowing that there's another bullet in gun turns towards witness and ask him what he is looking at and as witness exits front door and flees petitioner fires shot at witness, witness escapes and calls police-(2RT 708-715) The prosecution presented no evidence that petitioner strategically loaded gun in that manner. The prosecution contention in respect to planning was a mere conjecture a fanciful theory offered as for the purpose of reconciling first degree murder with the eyewitness's testimony which supports the only reasonable inference that petitioner believed that the gun didn't work. Petitioner contentions is further illustrated in the trial record in which the prosecution and the Judge stated that petitioner's action after the incident was the tell tale that petitioner planned

... (2) Continue



to Kill the victim. 3RT 627. 3RT 714. IN addressing motive the prosecution position was not only ambiguous it was based on the uncharged offense of petitioner's possessing marijuana for the purpose of sale IN that because petitioner was an alleged serious drug dealer he was motivated to Kill victim. IN regards to manner of Kill prosecution contends petitioner lured Victim into a false sense of security so petitioner could Shoot him, however testimony from several sources established that there was no bad blood between the petitioner and the victim that would cause victim to be on the alert or on the defensive-RT 1-106,107 2RT 308 Victim admired and looked up to petitioner whom was victim's uncle. Victim frequented petitioner home including earlier in the day prior to the alleged incident. IN fact prosecution's cheif witness testified that he and victim went to petitioner's home that evening because victim wanted to check on his uncle. So given the relationship between the petitioner and the victim it is unreasonable to suspect that petitioner would need to lure victim into a false sense of security by playing out the charade of pointing the gun at the wall while stating look see the gun don't work before firing the fatel shot. As petitioner previously stated the manner of Kill as advanced by the prosecution was for the sole purpose of making the eye witness testimony jive with it's first degree murder theory. IN denying

... (2) Continue

Petitioner's motion for a new trial the Judge stated that petitioner suffered a harsher sentence than he would have if he had launch a accident or misfortune defense a statement petitioner believes is another indication of what the evidence strongly suggest so based on the courts representation that the evidence strongly supported involuntary manslaughter and premeditation and deliberation predicated on petitioner's action after the incident - 3RT 627 3RT 811 Petitioner believes that his Constitutional Right to due process of law was violated rendering Petitioner's trial fundamentally unfair.

(d) **GROUND FOUR**: The consecutive term violates petitioner's Sixth and fourteenth Amendment rights

**Supporting FACTS:** Petitioner files habeas pursuant to Cunningham v California Petitioner's consecutive sentences violated the precepts set forth in Blakely v. Washington and the trial court did not state the reasons for imposing a consecutive sentences as required by section 1170, sub division (c) (A.O.B 50-56) Petitioner was convicted of one count of first degree murder with a firearm and one count of assault with a firearm and related firearm allegations. (CT 256) on count 2 assault with a firearm the court imposed the midterm of three years plus a consecutive mid term of four years for the firearm use. On Count 1 first degree murder the court imposed 25 years, plus 25 years for personal use of a firearm causing death (3RT 823) the court ordered the sentence in count 1 to run consecutive to the sentence imposed on Count 2 (CT 256, 3RT 824) Petitioner contends the trial court's consecutive sentencing scheme violated the constitutional principles the supreme Court set down in Blakely v. Washington (A.O.B 50-52) In Cunningham, the court held that California determinate sentencing scheme violated the precepts set forth in Blakely. As noted above, the court imposed a consecutive sentence. Petitioner contends that a concurrent (1 of 2)...

**Did you raise GROUND FOUR in the California Supreme Court?**

☒ Yes ☐ No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): Petition for review

(2) Case number or citation: S158997

(3) Result (attach a copy of the court's opinion or order if available): Denied

...(2) Continue



Sentence is mandated under Blakely. California's Sentencing laws permit the trial court to impose increased punishment in the form of consecutive sentences based on facts not submitted or found true by a jury. Section 669 provides that in the absence of special findings by the trial Judge. sentences for two or more felonies shall run concurrently. (Pen. Code 669 Subd (A) rule 4.425 implements the statue the rules do not require the presentation of these facts to jury, or subject them to being found true beyond a reasonable doubt by a unaminous jury. Indeed. rule 4.425 expressly prohibits the court from using facts found by the jury, such as elements of the offense and facts supporting enhancements in imposing consecutive sentences. (Cal Rules of Court Rule 4.425 Subd. (b) Rather. consecutive sentencing under these rules permits the trial Judge alone to increase punishment based on facts beyond those found by the jury verdict by a mere preponderance of the evidence Under the reasoning of Apprendi Blakely and now Cunningham the California Scheme that permits a trial court to aggravate a term by imposing consecutive sentences based on Judge found fact violates petitioner's Sixth and Fourteenth Amendment right

(2 of 2)

Ground five Petitioner's trial attorney failed to introduce favorable evidence – Ineffective assistance of counsel Due process as guaranteed by the 6th and 14th Amendments

**Supporting FACTS:** On or about January 3 2006 petitioner was arrested and charged with first degree murder, shortly after petitioner was arraigned and Appointed counsel whom represented Petitioner from arraignment to sentencing. Prior to Petitioner's trial Prosecution provided Petitioner's Counsel with discovery which alleged that DNA (Blood) was found in Petitioner's car prosecution believed match the victim Prosecution also put petitioner's attorney on notice that Petitioner car tires were also being compared to tire marks left at the location where victims body was found at Petitioner request Petitioner girlfriend Provided Petitioner's attorney with reciepts showing that Petitioner's car was in the auto repair shop at the time of the incident. (In camera hearing transcript pp. 28-30) Petitioner's Attorney sent an investigator to talk to the Auto Repair shop owner, whom confirmed that Petitioner's car had been in his possession for two weeks following the date marked on the reciept, that date being September 7 2005 during the course of Petitioner's trial a substantial amount of circumstantial evidence was introduced to advance the prosecutions theory that petitioner used his car to dispose of the victim's body the

**Did you raise GROUND** Five **in the California Supreme Court?** (1 of 2)...

☒ Yes ☐ No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): Habeas petition

(2) Case number or citation: S158155

(3) Result (attach a copy of the court's opinion or order if available): Denied

... (d) continue

prosecutions case was summed up with yet more highlighting of petitioners car - 3RT. 715, 718, 719, 726, 736-737 at the onset of petitioners trial, having been investigated, Petitioner and Petitioner's attorney concluded that evidence placing Petitioner's car in repair shop at the time of the incident, was both Relevant and material and therefore would be introduced by Petitioner's attorney at petitioner's trial. yet petitioners attorney failed to do so. See Auto Repair shop reciepts and investigators report in habeas petition filed to the lower courts.

# FACTUAL AND LEGAL BASIS FOR CLAIM

## I.

## PETITIONER WAS DENIED HIS DUE PROCESS AS GUARANTEED BY THE 6TH AND 14 AMENDMENTS OF THE UNITED-STATES CONSTITUTION AND ARTICLE I, SECTION 15 OF THE CALIFORNIA CONSTITUTION. THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

THE HIGH COURT HAVE HELD THAT A CRIMINAL DEFENDENT WITH A COURT APPOINTED ATTORNEY IS ENTITLED TO A" REASONABLE, COMPETENT ATTORNEY ACTING AS A DILIGENT, CONSCIOUS ADVOCATE PEOPLE V. POPE, 23 Cal.3d at p.427, 152 Cal.Rptr. 732, 590 P.2d 859.

IN REFERING TO DEFENDENTS/PETITIONES CAR THE PROSECUTION IN CLOSING ARGUMENTS STATED... "THE CAR WAS FOUND A MONTH LATER, BUT IT TOO IS AN IMPORTANT PART OF THE EVIDENCE. THERE ARE THINGS IN THE CAR THAT HAD BEEN WASHED. THERE ARE DISCOLORED PORTIONS OF THE BACK SEAT OF THE CAR. THERE ARE CLEANING PRODUCTS THAT ARE AT THE HOUSE, ALL CONSCIOUSNESS OF GUILT THAT DEFENDENT IS MOVING QUICKLY TO COVER HIS TRACKS. AND THATS WHAT HE DID..." [EXIBIT "D" CLOSING ARGUMENTS — P. 726] THE PROSECUTION

CONTINUED TO ADVANCE THIS THEORY THROUGHOUT CLOSING ARGUMENTS AS IT HAD THROUGHOUT TRIAL, BASICALLY UNCONTESTED.

ALTHOUGH PETITIONER'S ATTORNEY POINTED OUT TO THE JURY THAT NO DNA WAS FOUND IN PETITIONER'S CAR, AND TIRE MARKS FOUND AT THE LOCATION WHERE VICTIM'S BODY WAS DISCOVERED DIDN'T MATCH PETITIONER'S TIRES, THIS DID LITTLE TO DISPELL THE THEORY ADVANCED BY PROSCECUTION THAT, A MONTHS ABSENTS, CLEANING CHEMICALS, AND DIFFRENT TIRES WERE THE REASON NO POSITIVE MATCH COULD BE MADE.

THE INTRODUCTION OF THE EVIDENCE THAT PETITIONER'S CAR WAS IN THE AUTO REPAIR SHOP AT THE TIME THE PROSCECUTION ALLEGES IT WAS USED TO ASSIST IN COVERING UP THE CRIME WOULD HAVE HAD A POTENTIAL IMPACT ON THE PROSECUTIONS THEORY, WHICH WAS CHARACTERIZED (PETITIONER'S CAR) AS "AN IMPORTANT PART OF THE EVIDENCE".

II.

TRIAL COUNSEL MUST BE ACCORDED WIDE LATITUDE AND DISCRETION REGAURDING TRIAL TACTICS AND STRATAGY. PEOPLE.V-FRIERSON SUPRA, 25 Cal.3d at p.166, 158.

AT THE REQUEST OF PETITIONER A HEARING WAS

HELD TO ADDRESS THIS ISSUE AT WHICH TIME PETITIONE'S ATTORNEY INDICATED THAT THE REASON THIS INFORMATION WAS NOT INORODUCED WAS BECAUSE SHE HAD BEEN UNABLE TO GET A FIRM DATE AS TO WHEN PETITIONER'S CAS WAS TRANSFERED FROM FIRST AUTO REPAIR SHOP (RIALTO AUTO CENTER.) TO SECOND AUTO REPAIR SHOP (MORALES, TIRE, AUTO REPAIR.). [SEE: EXIBIT "E" TRANSCRIPT/HEARING — P. 764.].

HOWEVER, PETITIONE'S ATTORNEY'S REASON FOR FAILING TO INTRODUCE THIS INFORMATION CAN BE LOGICALLY SCRUTINIZED BY THE FACT THAT NOT ONLY WAS PETITIONER'S CAR UNDRIVABLE AND HAD TO BE TOWED FROM FIRST REPAIR SHOP TO THE SECOUND, THE OWNER OF THE FIRST SHOP (RIALTO AUTO CENTER.), STATED FIRMLY THAT PETITIONER'S CAR WAS IN AUTO REPAIR SHOP OWNER'S POSSESSION FROM THE DATE OF THE RECIEPT, BEING SEPTEMBER 7, 2005 UNTIL TWO WEEKS THEREAFTER. THIS CLEARLY SHOWS THAT PETITIONER'S WAS NOT IN POSSESSION OF HIS CAR AT THE TIME OF THE INCIDENT.

FURTHERMORE, PETITIONER'S ATTORNEY'S EXPLAINATION. CONCERNING THIS ISSUE TAKE AN AMBIGUOUS TURN WHEN FOLLOWING PETITIONER'S CONVICTION, PETITIONERS APPELLATE ATTORNEY INDICATE TO PETITIONER BY WAY OF A WRITTEN RESPONSE THAT PETITIONER'S TRIAL ATTORNEY MADE A TACTICL DECISION NOT TO INTRODUCE INFORMATION THAT PETITONER'S CAR HAD BEEN IN A REPAIR SHOP AT THE TIME OF THE INCIDENT BECAUSE THE PROSECUTON HAD EVIDENCE THAT REPAIR SHOP OWNER HAD BEEN INTIMIDATED BY PETITIONER'S FAMILY MEMBERS AND THIS EVIDENCE WOULD OF HURT PETITIONER'S CASE. [SEE: EXIBIT "E" LETTER FROM APPELLATE ATTORNEY.] [JULY 24, 2007.]

HOWEVER, WHEN A HEARING WAS HELD IN REGAURDS TO WHY AUTO REPAIR SHOP INFORMATION WAS NOT INTRODUCED, NEITHER PETITIONER'S ATTORNEY OR THE PROSECUTOR, WHOM ACCORDING TO PETITIONER'S APPELLATE ATTORNEY WAS THE PROCURER OF SUCH EVIDENCE, EVER MENTIONED ANYTHING CONCERNING INTIMIDATION OF A POSSIBLE WITNESS, WHICH SURELY WOULD OF AROSE TO SOME CRIMINAL CONDUCT. INFACT, WHEN TRIAL COURT INVITED PROSECUTOR TO COMMENT ON THE ISSUE OF PETITIONERS CAR AND THE AUTO REPAIR SHOP THE PROSECUTOR SIMPLY DISMISSED IT AS A TACTICAL STRATAGY ON THE PART OF PETITIONER'S ATTORNEY, FURTHER STATING, THAT PETITIONER COULD HAVE BEEN HAVING TIRES CHANGED SO THEY WOULDN'T MATCH [SEE: EXIBIT "E" TRANSCRIPT/HEARING — P. 765].

CLEARLY THIS WOULD OF BEEN THE APPROPRIATE TIME FOR BOTH PARTIES TO BRING INFORMATION OF WITNESS INTIMIDATION TO THE COURTS ATTENTION. ESPECIALLY, PETITIONER ATTORNEY, IF THIS WAS INFACT THE TRUE REASON FOR NOT INTRODUCING AUTO REPAIR SHOP INFORMATION.

GIVEN THE CIRCUMSTANCES THAT I HAVE STATED HEREIN, IT IS THE PETITIONER'S CLAIM THAT PETITIONER'S ATTORNEY FAILURE TO INTRODUCE, AT TRIAL, THE EVIDENCE THAT PETITIONER'S CAR WAS IN A AUTO REPAIR SHOP AT THE TIME OF THE INCIDENT, WHICH WAS RELEVANT AND MATERIAL, WAS NOT BASED ON A SOUND TACTICAL STRATAGY / DECISION.

**23.** Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes ☒ No

**24.** If your answer to #23 is "Yes," give the following information:

(a) Name of Court: N/A

(b) Case Number: N/A

(c) Date action filed: N/A

(d) Nature of proceeding: N/A

(e) Name(s) of judges (if known): N/A

(f) Grounds raised: N/A

(g) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☒ No

**25.** Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing: Laura L Alvarez - 17830 Arrow Blvd Fontana, CA 92335

(b) At arraignment and plea: LAURA L ALVAREZ - 17830 Arrow Blvd Fontana, Ca 92335

(c) At trial: LAURA L Alvarez - 17830 Arrow Blvd Fontana CA 92335

(d) At sentencing: LAURA L Alvarez - 17830 Arrow Blvd Fontana CA 92335

(e) On appeal: Charlotte E. Costan - P.O. Box 3083 Burbank CA 91508

(f) In any post-conviction proceeding: N/A

(g) On appeal from any adverse ruling in a post-conviction proceeding: N/A

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☒ Yes ☐ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐ Yes ☒ No

(a) If so, give name and location of court that imposed sentence to be served in the future: N/A

(b) Give date and length of the future sentence: N/A

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
☐ Yes ☒ No

28. Consent to Magistrate Judge Jurisdiction

In order to insure the just, speedy and inexpensive determination of Section 2254 habeas cases filed in this district, the parties may waive their right to procced before a district judge and consent to magistrate judge jurisdiction. Upon consent of all the parties under 28 U.S.C. § 636(c) to such jurisdiction, the magistrate judge will conduct all proceedings including the entry of final judgment. The parties are free to withhold consent without adverse substantive consequences.

The Court encourages parties to consent to a magistrate judge as it will likely result in an earlier resolution of this matter. If you request that a district judge be designated to decide dispositive matters, a magistrate judge will nevertheless hear and decide all non-dispositive matters and will hear and issue a recommendation to the district judge as to all dispositive matters.

You may consent to have a magistrate judge conduct any and all further proceedings in this case, including the entry of final judgment, by indicating your consent below.

Choose only one of the following:

☒ Plaintiff consents to magistrate judge jurisdiction as set forth above.

**OR**

☐ Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

**29.** Date you are mailing (or handing to a correctional officer) this Petition to this court: 1 July 2008

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

N/A

SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

1 July 2008 — (DATE)

Jerome W Scott — SIGNATURE OF PETITIONER

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 153080 - TC**

**July 16, 2008
14:00:51**

**Habeas Corpus**
USAO #.: 08CV1278
Judge..: JOHN A HOUSTON
Amount.: $5.00 OC
Check#.: 111-090326

**Total-> $5.00**

FROM: JEROME NORMAN SCOTT
VS.
LARRY SMALL

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law; except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

FILED
08 JUL 15 PM 1:54
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| **Jerome Norman Scott** | **Larry Small** |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **Imperial County** (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **Imperial County** (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) **N/A** | ATTORNEYS (IF KNOWN) '08 CV 1278 JAH LSP |

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT (For Diversity Cases Only)**

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

2254 ✓ 1983
FILING FEE PAID
Yes No
IFP MOTION FILED
Yes No ✓
COPIES SENT TO
Court ProSe

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

**28 U.S.C. 2254**

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

**CONTRACT**
- ☐ 110 Insurance
- ☐ Marine
- ☐ Miller Act
- ☐ Negotiable Instrument
- ☐ 150 Recovery of Overpayment &Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153Recovery of Overpayment of Veterans Benefits
- ☐ 160 Stockholders Suits
- ☐ Other Contract
- ☐ 195 Contract Product Liability

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury- Medical Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710Fair Labor Standards Act
- 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc.
- ☐ Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (13958)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reappointment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities Exchange
- ☐ 875 Customer Challenge 12 USC
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State
- ☐ 890 Other Statutory Actions

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Eiectmant
- ☐ 240 Tort to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☒ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding ☐ 2 Removal from State Court ☐ 3 Remanded from Appelate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 **DEMAND $** Check YES only if demanded in complaint: **JURY DEMAND:** ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):** JUDGE Docket Number

DATE 7/16/08 $5.00 TAC #153080

SIGNATURE [redacted]

7/15/08